FILED

07 MAY 25  AM 8:12

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ *LP*                    DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRIOT SCIENTIFIC CORPORATION, a Delaware corporation,<br><br>                            Plaintiff,<br><br>   vs.<br><br>MIKLOS B. KORODI, an Ohio citizen,<br><br>                          Defendant.<br><br>AND RELATED ACTIONS. | CASE NO. 06CV1543 R (CAB)<br><br>ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM WITH LEAVE TO AMEND |

## I.  Introduction

Miklos Korodi has brought a First Amended Counterclaim and Third-Party Complaint ("First Amended Counterclaim") against Patriot Scientific Corporation ("Patriot") and David Pohl (collectively, "defendants")[1].  Defendants have moved to dismiss the First Amended Counterclaim. For the reasons set forth below, the motion is granted.

## II.  Background

Patriot is a Delaware corporation with its principle place of business in Carlsbad,

---

[1] Although Patriot is technically a counterdefendant and Pohl is technically a third-party defendant, for ease of reference, Patriot and Pohl will be referred to in the collective as "defendants."

1 California.  Patriot is a public company that develops and sells microprocessors, software,

2 intellectual property licenses, and communications devices. First Amended Counterclaim ¶ 2.

3 Pohl is chairman of Patriot's board of directors as well as a shareholder and CEO of Patriot.

4 Id. ¶ 3.  Korodi worked as a consultant for Patriot from August 1, 2005 to February 27, 2006.

5 Id. ¶ 8.  According to the First Amended Counterclaim, Korodi agreed to work as a consultant

6 in exchange for monthly payments of $5,000, reimbursement of all of his expenses, and

7 participation in Patriot's stock option program.  Id. ¶ 8.

8      On February 27, 2006, Korodi received a letter terminating his consulting arrangement

9 with Patriot.  Id. ¶ 11.  In that letter, Korodi was promised 400,000 shares of Patriot stock.

10 Exhibit A-16, attached to First Amended Counterclaim.  Although he does not deny that he

11 was paid $5,000 a month and reimbursed for his expenses, Korodi alleges that "Patriot has

12 refused to issue shares and forward the stock certificates to Korodi . . . ."  First Amended

13 Counterclaim ¶ 19.

14      Patriot initially brought a complaint for declaratory relief against Korodi.  Korodi then

15 brought a counterclaim against Patriot and third-party complaint against Pohl for (1) breach

16 of oral contract; (2) breach of written contract; (3) breach of the implied covenant of good faith

17 and fair dealing; (4) negligence; (5) fraud/intentional misrepresentation; (6) negligent

18 misrepresentation; (7) constructive fraud; and (9) promissory estoppel in which Korodi seeks

19 both damages and specific performance.   These claims are the subject of defendants' motion

20 to dismiss.

21 **II.      Analysis**

22      **Legal Standard for Motion to Dismiss**

23      In ruling on a motion to dismiss for failure to state a claim, a complaint is construed in

24 the plaintiff's favor, generally taking as true all material facts alleged in the complaint. Rosen

25 v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). "A complaint should not be dismissed unless

26 it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that

27 would entitle the plaintiff to relief." American Family Ass'n, Inc. v. City and County of San

28 Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

1    "Generally, a district court may not consider any material beyond the pleadings in ruling

2    on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d

3    1542, 1555 n. 19 (9th Cir. 1990). "However, material which is properly submitted as part of

4    the complaint may be considered." Id.; see also Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.

5    1994), *overruled on other grounds by* 307 F.3d 1119 (9th Cir. 2002).

6    **Choice of Law**

7    A federal district court in a diversity case applies the choice of law rules of the state in

8    which the court is located. Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir.

9    2001).  Thus, the court looks to California's choice of law rules. California applies the

10    governmental interest approach to choice of law issues. Under this approach, "the forum must

11    search to find the proper law to apply based upon the interests of the litigants and the involved

12    states." Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc., 14 Cal.App.4th 637, 645

13    (1993). The "'relevant contacts' stressed by the Restatement Second of Conflict of Laws are

14    not disregarded, but are examined in connection with the analysis of the interest of the

15    involved state in the issues, the character of the contract and the relevant purposes of the

16    contract law under consideration." Id. "The forum must consider all the foreign and domestic

17    elements and interests involved in the case to determine the applicable rule." Id.

18    As explained in Stonewall Surplus Lines:

19

20    The relevant contacts to be considered in a dispute over the validity of a contract
      or the rights thereunder are set forth in section 188, subdivision (2) of the

21    Restatement Second of Conflict of Laws: "(a) the place of contracting, (b) the
      place of negotiation of the contract, (c) the place of performance, (d) the

22    location of the subject matter of the contract, and (e) the domicile, residence,
      nationality, place of incorporation and place of business of the parties. These

23    contacts are to be evaluated according to their relative importance with respect
      to the particular issue."

24

25    Id.

26    Having considered the interests of the litigants and the involved states, the court

27    concludes that, with one exception, California substantive law should be applied.  The

28    exception is that under the California choice of law principal known as the "internal affairs

doctrine," this court must look to the law of the state of incorporation with respect to matters involving the regulation of Patriot's "internal affairs." See State Farm Mut. Auto. Ins. Co. v. Superior Court, 114 Cal.App.4th 434 (2003). As the California Court of Appeal has explained:

> "Internal affairs" include "steps taken in the course of the original incorporation, ... the adoption of by-laws, *the issuance of corporate shares*, the holding of directors' and shareholders' meetings, ... the declaration and payment of dividends and other distributions, charter amendments, mergers, consolidations, and reorganizations, the reclassification of shares and the purchase and redemption by the corporation of outstanding shares of its own stock."

Id. at 442 (2003) (quoting In re Harnischfeger Industries, Inc. 293 B.R. 650, 662 (D.Del.2003) (emphasis added).

Although Count 1 is a breach of contract claim, to the extent that defendants defend against this claim on the ground that Patriot cannot be forced to comply with an oral promise to issue corporate shares which was not in writing and approved by Patriot's board of directors, the internal affairs doctrine applies and dictates the application of Delaware substantive law.[2] See State Farm, 114 Cal. App. 4th at 446-47 (applying internal affairs doctrine where plaintiffs brought claims for breach of contract and breach of the covenant of good faith and fair dealing based on allegations that the company's board of directors did not pay dividends as promised).

---

[2] The court had the parties brief a passage from State Farm wherein the California court of appeals noted that "'[c]orporations and individuals alike *enter into contracts*, commit torts, and deal in personal and real property. Choice of law decisions relating to such corporate activities are usually determined after consideration of the facts of each transaction.'" State Farm, 114 Cal.App.4th at 447 (quoting Draper v. Gardner Defined Plan Trust, 625 A.2d 859, 865 (Del. 1993)) (emphasis added). Although this passage, at first blush, could be read as creating an exception to the internal affairs doctrine, a closer review of that passage and the authority upon which it relies reveals otherwise. In Draper, the source of this proposition, the sentences preceding the quoted passage are as follows: "Internal corporate affairs involve those matters which are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. It is essential to distinguish between acts which can be performed by both corporations and individuals, and those activities which are peculiar to the corporate entity." Id. (quoting McDermott , Inc. v. Lewis, 531 A.2d 206 (Del. 1987)). While both corporations and individuals can enter into contracts, only corporations may issue corporate shares (as here) or dividends (as in State Farm). The holding of State Farm makes clear that, even if a plaintiff's claim is couched in terms of a breach of contract, when the corporate defendant's obligation under the contract involve an act that may only be performed by the corporation, the internal affairs doctrine – not a contacts analysis – applies.

1    In an attempt to escape application of the internal affairs doctrine, Korodi contends that

2   Patriot's board of directors has, in written Stock Options Plans ,chosen California law to

3   govern the issuance of its stock options. However, those Stock Option Plans are not before

4   the court and would not be properly considered on a motion to dismiss. And, more

5   importantly, the issue here is not what law applies to the issuance of stock options pursuant to

6   written Stock Options Plans containing a choice of law provision but, rather, what law should

7   be applied to an alleged oral promise by Patriot to issue stock options to Korodi. What the

8   board has decided to do with respect to the issuance of stock options to others in a written

9   stock option plan is not relevant here.

10   **Count 1:  Breach of Oral Contract**

11   Korodi alleges that "[o]n or about August 1, 2005, Korodi and Patriot, by and through

12   Pohl, . . . entered into an oral agreement in which Korodi promised and agreed to provide

13   consulting services in exchange for monthly payments of $5,000, reimbursement of all

14   expenses incurred, and participation in Patriot's stock option program."  Counterclaim ¶ 21.

15   Korodi goes on to allege that Patriot breached the terms of this agreement and that this breach

16   "includes, but is not limited to, Patriot's failure and/or refusal to issue stock to Korodi and

17   honor the option to purchase 400,000 shares."  Counterclaim ¶ 22. Importantly, although

18   perhaps ¶ 22 could be interpreted as alleging that Patriot  – in August of 2005 – promised

19   Korodi 400,000 shares of stock, as Korodi's counsel has subsequently admitted, the alleged

20   August 2005 promise was of an *unspecified* number of shares.  See Transcript at 18:3-12.

21   Korodi's Response to Court's Order Requiring Additional Briefing at 3:9-12 (admitting that

22   "the exact number of shares and strike price were not specified at the time the parties entered

23   into the oral employment agreement").[3] Patriot seeks to dismiss this claim on the ground that

24   Patriot's board of directors did not approve the issuance of stock options to Korodi, as Korodi

25   admits in his First Amended Counterclaim at paragraphs 49(c) and 71.

26   

27   [3] The court notes that in his opposition, Korodi asserts that he "was promised as part
of his compensation for services rendered to Patriot the option to purchase 400,000 shares of

28   Patriot common stock."  However, in light of his admission at oral argument, the court reads
this assertion regarding a promise of 400,000 shares as the promise in the February 27, 2006
letter.

As discussed *supra*, in resolving the motion to dismiss this claim, Delaware law applies. Delaware Code § 157(a) provides that "[s]ubject to any provisions in the certificate of incorporation, every corporation may create and issue, whether or not in connection with the issue and sale of any shares of stock or other securities of the corporation, rights or options entitling the holders thereof to acquire from the corporation any shares of its capital stock of any class or classes, *such rights or options to be evidenced by or in such instrument or instruments as shall be approved by the board of directors.*" 8 Del. Code § 157(a) (emphasis added). In Grimes v. Alteon Inc., 804 A.2d 256 (Del. 2002), the Delaware Supreme Court was confronted with the issue of "whether an alleged oral promise made to a stockholder by the CEO of a corporation to sell 10% of the corporation's future private stock offering to the stockholder, when coupled with a corresponding oral promise by the stockholder to buy that 10%, is enforceable where there has been no approval of the agreement by the board of directors and the agreement is not memorialized in a written instrument." Id. at 258. The court concluded that such an oral agreement was unenforceable. Id. The court explained that under Delaware law, "[t]he requirement of board approval for the issuance of stock is not limited to the act of transferring the shares of stock to the would-be stockholder, but includes an antecedent transaction that purports to bind the corporation to do so." Id. at 261. Thus, the alleged oral agreement was held to be "unenforceable for lack of both board approval and a written agreement." Id. at 266.     Similarly, in Scarpinato v. National Patent Development Corp., 347 N.Y.S.2d 623 (1973), the court refused to enforce an alleged oral agreement that included an option to purchase stock of a Delaware corporation in exchange for the plaintiffs' consulting services because, *inter alia*, there was "neither allegation nor proof that the [defendant's] board of directors ever considered or approved the options relied upon by plaintiffs" as required by Delaware law. Id. at 625.

Grimes and Scarpinato are controlling authority and dictate the dismissal of Korodi's claim for breach of an oral contract for lack of an allegation that Patriot's board of directors approved the options that Korodi alleges he was promised in August of 2005.

1    Korodi attempts to escape application of Delaware Code § 157 by contending that the

2    oral agreement he seeks to enforce is an employment agreement.  However, the specific oral

3    agreement he seeks to enforce is an agreement to award him shares of stock.  Korodi has failed

4    to cite any authority suggesting that an agreement to award shares of stock in the employment

5    context (for example an agreement to award an employee stock options) is exempt from the

6    requirements of § 157.  And, as noted above, <u>Scarpinato</u> involved an oral contract to grant

7    stock options in exchange for the plaintiffs acting as consultants to the defendant company –

8    exactly the situation here.

9    Korodi's reliance on Delaware Code § 124 is also unavailing.  Section 124 provides in

10   relevant part that "[n]o act of a corporation and no conveyance or transfer of real or personal

11   property to or by a corporation shall be invalid by reason of the fact that the corporation was

12   without capacity or power to do such act or to make or receive such conveyance or transfer"

13   except under certain circumstances.  8 Del. Code § 124.  As explained by a leading

14   commentator, § 124 is a provision that limits the doctrine of ultra vires.  <u>See</u> 7A Fletcher Cyc.

15   Corp. § 3490.10.  As that commentator has explained:

16

17

18   A corporation may exercise only those powers that are granted to it by law, by
     its charter or articles of incorporation, and by any bylaws made pursuant to the
     laws or charter; acts beyond the scope of the power granted are ultra vires.  An
19   ultra vires act or contract, as the term is used in this chapter and according to the
     strict construction of the term, is one not within the express or implied powers
20   of the corporation as fixed by its charter, the statutes, or the common law.

21

22   Fletcher Cyc. Corp. § 3399.  Importantly, a "class of corporate contracts that are sometimes

23   inaccurately said to be ultra vires is where the power exists to do what was done, provided the

24   corporation does it in a prescribed way."  Fletcher Cyc. Corp. § 3402 (emphasis added).

25   Where a corporation has the power to act, "the irregular exercise of" that "unquestioned

26   power" simply "is not ultra vires."  <u>Id.</u>

27   Here Patriot unquestionably has the power to award stock options.  The only issue here

28   is whether it exercised this power as required by statute.  In light of the foregoing, Patriot is

1   not, by contending that its power was not exercised as required, arguing the oral contract was

2   ultra vires. Thus, § 124, which limits the scope of the ultra vires doctrine, is inapplicable.

3       A second, alternative ground for dismissal of Count 1 which was addressed at oral

4   argument and which was the subject of further briefing was the fact that the alleged oral

5   contract failed to contain an essential element. As Korodi has admitted, the number of shares

6   to which he is entitled is an essential element, see Transcript at 18:6-12,[4] and an agreement

7   lacking an essential term is not enforceable. See City of Los Angeles v. Superior Court, 51

8   Cal.2d 423, 433 (1959); 1 Witkin, Summary of California Law, 20th Ed. § 147 at p. 186.

9       The parties disagree as to whether a court can assist the parties in essentially "filling in"

10  an essential element of a contract not otherwise agreed upon. However, as defendants

11  correctly note, to the extent the Uniform Commercial Code allows courts to "fill in" essential

12  terms, this is not a transaction in goods subject to the Uniform Commercial Code. Moreover,

13  California courts, in contexts similar to that here, have refused supply essential terms in order

14  to create an enforceable contract. For example, with respect to real estate option contracts, an

15  agreement "which leaves an essential term to future agreement is not enforceable." Ablett v.

16  Clauson, 43 Cal.2d 280, 285 (1954). The exception is where a lease option contract does not

17  specify the exact amount of future rent but provides "an ascertainable standard for the

18  determination of rent," in which case the lease option contract "may be enforceable." Robert

19  T. Miner, M.D., Inc. v. Tustin Ave. Investors, LLC, 116 Cal.App.4th 264, 274 (2004). Here,

20  at the time that the parties entered into the alleged oral employment agreement, the agreement

21  was for an unspecified number of shares of Patriot stock, and the parties did not agree on a

22  standard for determining the number of shares to which Korodi would be entitled.

23  Accordingly, the August 2005 oral agreement that Korodi would receive stock options is

24  unenforceable for the additional reason that the parties failed to agree with respect to an

26      [4] There can be no doubt that the amount of shares to which Korodi would be entitled
    is an essential element. The purpose of damages in a breach of contract action is to place the
27  party in the same position as if the other side had fulfilled its promise under the contract.
    Without an agreement regarding the number of shares or the formula for determining the
28  number of shares, the court would have no basis for determining the position Korodi would
    have been in had Patriot granted him the stock.

essential element of the contract.

Accordingly, the motion to dismiss Count 1 of the First Amended Counterclaim is granted, as is that portion of Count 3 that seeks specific performance of the alleged oral agreement.

**Count 2: Breach of a written contract**

In Count 2, Korodi asserts a claim for breach of an alleged written agreement entered into by the parties on February 27, 2006. See First Amended Counterclaim ¶ 26. According to Korodi, this agreement "provided for, among other things, a stock option grant to Korodi for 400,000 shares of Patriot common stock . . . ." Counterclaim ¶ 26. Attached to the Counterclaim as Exhibit A is the letter that purportedly embodies this written agreement. That letter provides in relevant part:

> This will serve as notice that your services as a consultant for Patriot Scientific are being terminated, effective immediately.
>
> You will be paid your regular consulting fee for the month of February of $5000 . . . . In addition you will be paid $10,000 representing a severance payment equivalent to fees for 2 months.
>
> Finally, you are being awarded stock options for 400,000 shares of Patriot common stock, effective as of January 6, 2006, at the share price on the close of trading that day. The options will vest in two increments as follows: options for 200,000 shares vested as of January 6, 2006, and the remaining 200,000 options will vest on the date when Patriot Scientific shall have received license fees distributions from P-Newco in calendar year 2006 reaching the aggregate amount of $20 million.

Korodi alleges that Patriot breached this agreement by refusing to honor his option to purchase 400,000 shares of Patriot stock. First Amended Counterclaim ¶ 27.

It is hornbook law that a contract, to be enforceable, must be supported by consideration. "California courts have repeatedly refused to enforce gratuitous promises, even if reduced to writing in the form of an agreement." Jara v. Suprema Meats, Inc., 121 Cal. App. 4th 1238, 1249 (2004). Importantly, "the consideration for a promise must be an act or a return

promise, *bargained for and given in exchange for the promise*." Simmons v. California Institute of Technology, 34 Cal.2d 264, 272 (1949) (emphasis added); see also Passante v. McWilliam, 53 Cal. App.4th 1240, 1247 (1997) (explaining that to be entitled to enforce a promise, the consideration given by the plaintiff "must result from a bargain"). Because the consideration must be given in exchange for the promise, "[p]ast consideration cannot support a contract." Passante, 53 Cal.App.4th at 1247; see also Simmons, 34 Cal.2d at 272. Thus, in Passante, the court concluded that there was no valid consideration for a corporation's promise to pay the plaintiff stock in the corporation for procuring an investor that saved the corporation from financial ruin where the corporation's promise was made *after* the plaintiff procured the investor. And in Simmons, the court concluded that there was no valid consideration for a contract regarding royalties where the contract was made "in consideration of employment" and that phrase was construed as referring to the plaintiffs' past employment.

Korodi appears to contend that the consideration for the promise to grant him 400,000 shares was his agreement to work for Patriot as an independent contractor. However, Korodi's promise to work for Patriot as an independent contractor could not be the consideration for the promise to pay Korodi 400,000 shares because his promise to work for Patriot was made months before Patriot's promise to give him 400,000 shares. Moreover, Patriot terminated Korodi's employment in the letter promising him 400,000 shares. In other words, Patriot in February of 2006 clearly did not bargain for Korodi's services in exchange for the promise to pay 400,000 shares, as evidenced by its decision to terminate Korodi's services in the same letter that promised the 400,000 shares.

Korodi cites Rachart v. Phillips, 120 Cal.App.2d 645 (1953) for the proposition that "the rendering of past services with the expectation of future payment constitutes sufficient consideration for a contract." Korodi's Response to Court's Order Requiring Additional Briefing at 6:16-18. However, the consideration provided in Rachart was not solely past consideration. In Rachart, Raichart and Phillips entered into an agreement that provided that "[f]or promotional services rendered" Phillips would give Raichart 320 shares of stock of Gordon Oil Company "when received from escrow." After Raichart died, his widow brought

1  an action to enforce the agreement.  Phillips defended on the ground that, *inter alia*, the

2  agreement was not supported by consideration.  Phillips argued that because "all the stock of

3  the corporation was sold prior to the execution of the contract there could be no promotional

4  services for Raichart to perform thereafter [and] that past consideration would not be sufficient

5  in the absence of a preexisting legal obligation . . . ."  Id. at 651.  However, the court found

6  valid present consideration, explaining:

7

8

9

10

11

> The agreement in question recites a consideration indicating services and assistance in attempting to make this corporation a success.  Assuming that all of the stock was sold, many things remained to be done, and there is some indication of a pre-existing obligation.  There is evidence justifying the inference that Taichart was of assistance to Phillips both before and after the date of the agreement . . . .

12

13  Id.  Here, in contrast, Korodi did not supply any services in exchange for the promise to pay

14  400,000 shares of stock, as evidenced by the fact that the letter in which the 400,000 shares of

15  stock were promised terminated Korodi's services, "effective immediately."

16     Korodi also cites Parke & Lacy Co. v. San Francisco Bridge Co., 78 P. 1065 (1904).  In

17  that case, the plaintiff undertook to secure for the defendant a contract with the government

18  of Guatemala. At some point after the plaintiff had been working on procuring the contract,

19  the parties entered into an agreement "[i]n consideration of the services already rendered by

20  the party of the first part and such further services as it may render in this matter," whereby the

21  defendant agreed to pay the plaintiff 5% of the total amount received if, in fact, the defendant

22  was awarded a contract by the Guatemalan government.  After the contract was awarded, the

23  defendant refused to pay.  After a trial, the plaintiff was awarded seventeen hundred and fifty

24  dollars under the contract.  On appeal, the defendant argued, inter alia, that the plaintiff did not

25  furnish any consideration for its promise to pay a 5% commission *in the future*.  The court

26  concluded that this contention was not "maintainable," explaining:

27

28

06CV1543

1
2
3

> It goes upon the theory that a past executed consideration will not support any promise different from that which the law implies – which is a promise to pay *in præsenti*, on request, and that an executed consideration will not support a promise to pay *in futuro*. Whatever may be said of this rather abstruse doctrine, it is not applicable to the case at bar

4
5
6
7
8
9
10
11

Id. at 539. The court then went on to note that the written agreement "merely put into a permanent written form what they then finally agreed upon as to the future contingent compensation." Id. As a leading commentator has noted, cases involving the enforcement of a written contract that is entered into subsequent to the rendering of broker services without a written contract tend to depart from the general rule that past services rendered cannot be valid consideration for a contract. Thus, the court concludes that Parke & Lacy is limited to its facts.

12
13
14
15
16

Korodi also relies on Delaware law for the proposition that past consideration is good and valid consideration for the issuance of stock. First, as discussed *supra*, California, not Delaware, law is applicable to the issue of whether the parties entered into a written contract supported by consideration. Second, in any event, Korodi confuses valid consideration for the issuance of stock with valid consideration for a contract to issue stock.

17
18
19
20
21
22
23
24
25
26

Delaware, like California, does not recognize past consideration as supporting *the formation of a contract*. See Continental Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1232 (Del.Ch. 2000) ("Past consideration, as opposed to true consideration, however, cannot form the basis for a binding contract. A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract."). However, as a matter of corporations law, Delaware courts have held that a Delaware corporation may lawfully issue corporate shares for past services rendered. For example, Article 9, Section 3 of the Delaware Constitution, while in effect,[5] provided in relevant part that "[n]o corporation shall issue stock except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation." Although Korodi reads this provision as authority for the proposition

27
28

---

[5]   Article 9, Section 3 was repealed effective June 30, 2004.   After its repeal, corporations had even broader legal authority to issue stock.

1   that past services rendered is sufficient consideration to support's Patriot's promise to award

2   him stock options, Article 9, Section 3 simply addressed a corporation's *legal authority* to

3   issue stock.  Under that provision, a corporation had the authority and could lawfully issue

4   stock –  should it choose to do so – for past services.  Thus, if a corporation's board of

5   directors voted to issue, and so issued, stock for past services rendered (for example, for

6   services provided by the corporation's promoters prior to incorporation), then the legality of

7   the issuance of the stock could not be successfully challenged by others (for example, by

8   shareholders in the context of a derivative action seeking the cancellation of the shares).

9   Article 9, Section 3 did not address the question here: whether past services rendered is, under

10  the law of contract, valid consideration for the contractual promise to issue stock *so that the*

11  *promisee may enforce such promise.*  For this reason, the following cases cited by Korodi are

12  not on point: Zupnick v. Goizueta, 698 A.2d 384, 387 (Del.Ch. 1997) (dismissing shareholder

13  derivative action challenging issuance of stock options to CEO); In Re Seminole Oil & Gas

14  Corp., 150 A.2d 20 (1959) (affirming dismissal of shareholder suit seeking to cancel shares

15  of stock paid to president where shares were issued for services rendered to the corporation

16  prior to incorporation). Blish v. Thompson Automatic Arms Corp., 64 A.2d 581 (Del. 1948)

17  (affirming dismissal of shareholder suit seeking to cancel shares of stock paid to promoter of

18  company for preincorporation services); Haft v. Dart Group Corp., 841 F.Supp. 549 (D.Del.

19  1993) (rejecting defendant's argument that the plaintiff's shares, which were issued for past

20  services rendered, were voidable because they were issued for invalid consideration).

21      Korodi also cites Delaware cases that have noted that *continued* employment in an at-

22  will position is sufficient consideration for an agreement to award stock options.  See, e.g.,

23  Haney v. Laub, 312 A.2d 330, 332 (Del.Super. 1973);  Research & Trading Corp. v. Powell,

24  468 A.2d 1301, 1305 (1983).  However, even if the court were to consider Delaware authority,

25  these cases do not support Korodi's position because Korodi did not continue in his

26  employment with Patriot after the promise of the 400,000 shares – his employment was

27  terminated in the same letter containing the promise.

28      Finally, Korodi contends that his "acceptance" of his termination supplied the necessary

consideration. However, because the First Amended Counterclaim is devoid of allegations that Korodi's consulting contract was for a specified period of time or provided for termination only for "good cause," it appears that Patriot could terminate Korodi services at any time and that Korodi had no choice but to accept this termination. Cf. Abrahamson v. NME Hosps., Inc., 195 Cal. App.3d 1325, 1329-30 (1987); Cal. Labor Code § 2922. Thus, Korodi did not, by "accepting" his termination, supply consideration. See General Motors Acceptance Corp. v. Brown, 2 Cal.App.2d 646, 650 (1934) ("It is a uniform rule of law that a consideration for an agreement is not adequate when it is a mere promise to perform that which the promisor is already legally bound to do.").

Because the February 27, 2006 promise to pay the 400,000 shares is not supported by bargained-for and valid consideration that would support that promise, Patriot is entitled to dismissal of Count 2 and that portion of Count 3 seeking specific performance of the written promise to pay Korodi 400,000 shares.

### Count 4: Breach of the implied covenant of good faith and fair dealing

In Count 4, Korodi alleges that Patriot breached the covenant of good faith and fair dealing contained in the alleged oral and written agreements discussed *supra*. "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive *the benefits of the agreement actually made*." Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 349 (2000). "The covenant thus cannot 'be endowed with an existence independent of its contractual underpinnings.'" Id. (quoting Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 36 (1995)). Nor can it "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Id. Accordingly, "the existence of a contractual relationship is . . . a prerequisite for any action for breach of the covenant" of good faith and fair dealing. Kim v. Regents of the University of California, 80 Cal.App.4th 160, 164 (2000); see also Smith v. City and County of San Francisco, 225 Cal.App.3d 38, 49 (1990).

Because, as discussed *supra*, Korodi has failed to allege the existence of an enforceable

1  contractual relationship, he has failed to state a claim for breach of the covenant of good faith

2  and fair dealing, and Count 4 is dismissed.

3  **Count 5: Negligence**

4  In Count 5, Korodi alleges a claim for negligence based on the fact that defendants

5  made promises that went unfulfilled.  Specifically, Korodi alleges that defendants failed to

6  "make such reasonable inquiry as a reasonable person would make" and made decisions,

7  entered into agreements, and made promises "without reasonable diligence in ascertaining the

8  facts and circumstances."  First Amended Counterclaim ¶ 45.

9  Korodi is attempting to turn a breach of contract action into a tort action for negligence.

10  However, the mere negligent breach of a contract is not sufficient basis for imposing tort

11  liability.  Erlich v. Menezes, 21 Cal.4th 543, 552 (1999).  Rather, "[c]onduct amounting to a

12  breach of contract becomes tortious only when it also violates a duty independent of the

13  contract arising from principles of tort law."  Applied Equipment Corp. v. Litton Saudi Arabia

14  Ltd., 7 Cal.4th 503, 515 (1994).  "Tort damages have been permitted in contract cases where

15  a breach of duty directly causes physical injury; for breach of the covenant of good faith and

16  fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public

17  policy; or where the contract was fraudulently induced."  Erlich, 21 Cal.4th at 551-52 (internal

18  citations omitted).  Thus, "the duty that gives rise to tort liability is either completely

19  independent of the contract or arises from conduct which is both intentional and intended to

20  harm."  Id. at 552 .

21

22  In Count 5, Korodi does not allege facts falling within any of the enumerated situations

23  where tort damages have been allowed in contract cases.  Although in his opposition he

24  suggests that defendants acted fraudulently and made intentional misrepresentations, that is not

25  what this count alleges.  This claim is styled as one for negligence, and it contains only

26  allegations of negligence.  Accordingly, the motion to dismiss Count 5 for failure to state a

27  claim is granted.

28

**Counts 6 and 7:  Fraudulent/Intentional Misrepresentation and Negligent Misrepresentation**

In Count 6, Korodi alleges that defendants made various intentional misrepresentations regarding his right to participate in Patriot's stock option program, which misrepresentations were intended to deceive and defraud Korodi.  In Count 7, Korodi alleges that defendants made various negligent misrepresentations regarding his right to participate in Patriot's stock option program.  Defendants seek to dismiss these claims on the ground that Korodi has failed to comply with Rule 9(b), which provides in relevant part:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

"It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). "'[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule.'" Id. (quoting Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir.1985)).

As explained in Odom v. Microsoft Corp., — F.3d ---- , 2007 WL 1297249 (9th Cir. 2007):

> "Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir.1986) (internal quotation marks omitted) (quoting Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir.1977))."[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Id. at 1401; see also Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir.1989).

Id. at *12.

- 16 -

06CV1543

There is no dispute that the allegations of Count 6 are subject to the pleading requirement of Rule 9(b). A review of Count 6 reveals no allegations regarding where the alleged false representations were made to Korodi. Also, Korodi does not, by alleging that the misrepresentations were made by "Patriot and Pohl, both as an individual and as an agent or representative for Patriot," First Amended Counterclaim ¶ 48, sufficiently plead the identity of the parties to the misrepresentations.

Although Rule 9(b) does not, on its face, appear to apply to negligent misrepresentation claims, the court concludes that Rule 9(b) applies to Count 7 as well. Under California law "negligent misrepresentation is a form of fraud . . . ." Ventura County Nat. Bank v. Macker, 49 Cal.App.4th 1528, 1530 (1996); see also Furla v. Jon Douglas Co., 65 Cal.App.4th 1069, 1077 (1998) ("Negligent misrepresentation is a form of "actual fraud," consisting of '[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true.') (citing Civ.Code, § 1572, subd. 2.); Continental Airlines, Inc. v. McDonnell Douglas Corp., 216 Cal.App.3d 388, 403 (1989) ("The case law, however, is clear that in California negligent misrepresentation is a form of fraud and deceit under sections 1710, subdivision 2, and 1572, subdivision 2."). Thus, the averments in support of Korodi's negligent misrepresentation claim are properly considered "averments of fraud" subject to the requirements of Rule 9(b). See Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 (D.Md. 2000) ("The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."); Toner v. Allstate Ins. Co., 821 F.Supp. 276, 283 (D.Del.1993) ("Although the language of Rule 9(b) confines its requirements to claims of mistake and fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."); Pitten v. Jacobs, 903 F.Supp. 937, 951 (D.S.C. 1995) (applying Rule 9(b) to claim for negligent misrepresentation). For the same reasons the allegations of Count 6 fail to meet Rule 9(b)'s pleading requirements, so, too, do the allegations of Count 7. Accordingly, defendants are entitled to dismissal of Counts 6 and 7.

**Count 8:  Constructive Fraud**

In Count 8, Korodi alleges that defendants engaged in constructive fraud.  Constructive fraud involves "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him" or "any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." Cal. Civ. Code § 1573.  "Constructive fraud 'arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.'" Tyler v. Children's Home Society, 29 Cal. App.4th 511, 548 (1994) (citing Odorizzi v. Bloomfield School Dist., 246 Cal. App.2d 123, 129 (1966) ; see also In re Harmon, 250 F.3d 1240, 1248 n. 10 (9th Cir. 2001).

A fiduciary is "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." Tyler, 29 Cal.App.4th at 548-549 (quoting 549 Rest.2d Agency, § 13, com. a; Destefano v. Grabrian, 763 P.2d 275, 284 (Colo.1988)). A fiduciary relationship is a relationship *created by law*, such as that of guardian and ward, trustee and beneficiary, principal and agent, or attorney and client. Persson v. Smart Inventions, Inc., 125 Cal.App.4th 1141, 1160 (2005).  As a matter of law, defendants and Korodi, as employer and independent contractor, did not have a fiduciary relationship.

Moreover, Korodi has not alleged sufficient facts to establish the existence of a confidential relationship.  "[A] confidential relationship may exist whenever a person *with justification* places trust and confidence in the integrity and fidelity of another." Orodizzi, 246 Cal.App.2d at 129 (emphasis added). "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." Barbara A. v. John G., 145 Cal.App.3d 369, 383 (1983). "'A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind.'" Davies v. Krasna, 14 Cal.3d 502, 510 (1975) (citing Rest. 2d Trusts, § 2, com. b). Although "[t]he existence of

1   a confidential relationship is generally a question of fact," <u>Tyler</u>, 29 Cal.App.4th at 549, where

2   the allegations of fact, if true, would be legally insufficient to establish a confidential

3   relationship, dismissal is appropriate.  <u>See</u> <u>Younan v. Equifax Inc.</u>, 111 Cal.App.3d 498, 517

4   (1980) ("Plaintiff's allegation that a 'confidential relationship' existed, is nothing more than

5   a conclusion of law and was properly disregarded by the court.").

6         In <u>Odorizzi</u>, the plaintiff, a teacher, alleged a confidential relationship between himself

7   and "the school superintendent and principal as agents" of the defendant school district. 246

8   Cal.App.2d at 129.  However, the plaintiff "set[] forth no facts to support his conclusion of a

9   confidential relationship between the representatives of the school district and himself, other

10  than that the parties bore the relationship of employer and employee to each other."  <u>Id.</u>  The

11  court of appeal affirmed the grant of the demurrer, explaining that "[u]nder prevailing judicial

12  opinion no presumption of a confidential relationship arises from the bare fact that parties to

13  a contract are employer and employee; rather, additional ties must be brought out in order to

14  create the presumption of a confidential relationship between the two."  <u>Id.</u> at 129.  Similarly,

15  in <u>Younan</u>, the court of appeal affirmed a demurrer to a cause of action for constructive fraud

16  where no fiduciary relationship was alleged and where, although a confidential relationship

17  was alleged, there were "no facts alleged sufficient to show that a confidential relationship

18  existed between plaintiff and the defendants. . . ." 111 Cal.App.3d at 517 (internal footnote

19  omitted).      Here, as in <u>Odorizzi</u> and <u>Younan</u>, Korodi alleges no facts supporting the

20  conclusory allegation of a confidential relationship.  Korodi alleges no relevant additional ties

21  that would create a presumption of a confidential relationship between he and his employer.

22  And, assuming the truth of the allegation that Korodi "placed trust and confidence in Patriot

23  and Pohl," First Amended Counterclaim ¶ 70, Korodi cannot unilaterally transform an

24  employee-employer relationship into a confidential relationship simply by the placement of

25  such trust.   As noted, "a confidential relationship may exist whenever a person *with*

26  *justification* places trust and confidence in the integrity and fidelity of another." <u>Orodizzi</u>, 246

27  Cal.App.2d at 129 (emphasis added).  Given that no presumption of a confidential relationship

28  arises out of the mere fact that the parties were employer and employee, it follows that an

1  employee is not justified in placing trust and confidence in the integrity and fidelity of an

2  employer solely because of the employment relationship.

3     Because Korodi has failed to allege any facts suggesting that he and defendants did in

4  fact have a fiduciary or confidential relationship, the motion to dismiss Count 8 is granted.

5  **Count 9:  Promissory Estoppel**

6

7     Count 9 is a claim for promissory estoppel. "Promissory estoppel is a theory applicable

8  to make binding a promise where: (1) the promisor makes a promise which the promisor

9  should reasonably expect will induce action or forbearance of a definite and substantial

10  character; (2) the promise does induce such action or forbearance by the promisee; and (3)

11  injustice can only be avoided by the enforcement of the promise." Pacific Architects

12  Collaborative v. State of California, 100 Cal.App.3d 110, 122 (1979). "Under this doctrine

13  a promisor is bound when he should reasonably expect a substantial change of position, either

14  by act or forbearance, in reliance on his promise, if injustice can be avoided only by its

15  enforcement."  Youngman v. Nevada Irrigation Dist., 70 Cal.2d 240, 249  (1969); see also

16  Smith, 225 Cal.App.3d at 48 (1990) (quoting Youngman).

17     Here, Korodi alleges that defendants made various promises to him regarding his

18  participation in the Patriot stock option program and then alleges in a conclusory fashion that

19  he "reasonably relied on Patriot's promises and representations and was induced to enter into

20  a consulting contract, accept termination of the consulting relationship with Patriot, and

21  otherwise reasonably rely to his detriment." First Amended Counterclaim ¶ 79.

22     "The party claiming estoppel must *specifically* plead all facts relied on to establish its

23  elements." Smith, 225 Cal.App.3d at 48 (emphasis added).  "One essential element" of

24  promissory estoppel "is detrimental reliance by the promisee."  Id.  In Smith, the plaintiffs

25  failed to allege facts that demonstrated that they "changed their position in any way because

26  of what they had been promised by the City" and simply relied upon "their conclusory

27  allegation that they reasonably and justifiably relied on the City's promises. . . . ." Id.  The

28  court of appeal concluded that "[h]aving failed to allege any facts demonstrating reliance,"

- 20 -                    06CV1543

1   the plaintiffs did not state a cause of action for promissory estoppel. Id.

2      Clearly, Korodi's conclusory allegation that he "otherwise reasonably rel[ied] to his
3   detriment" is insufficient to state a claim under Smith.  As will be seen, so, too, are Korodi's
4   allegations that he reasonably relied on the promise of stock options by entering into a
5   consulting contract with Patriot and by then "accepting" termination of this agreement.

6      Importantly, "[t]he purpose of this doctrine is to make a promise binding, under certain
7   circumstances, without consideration in the usual sense of something bargained for and given
8   in exchange." Youngman,  70 Cal.2d at 249. " If the promisee's performance was requested
9   at the time the promisor made his promise and that performance was bargained for, the
10  doctrine is inapplicable." Id.  Thus, in Youngman, the California Supreme Court concluded
11  that the doctrine of promissory estoppel was inapplicable where the plaintiff alleged that the
12  defendant employer promised him a pay increase in April of each year and that he "relied upon
13  this promise in accepting employment with the district, continuing in its employ, and refraining
14  from accepting a job elsewhere." Id. at 250.  The court noted:

15

16

17      It seems clear under these allegations that the district's promise, through its
        agent, that Youngman would be afforded a raise in April of each year, was part
18      of the bargain under which Youngman entered the district's employ. By
        remaining in his position and presumably rendering satisfactory service he
19      performed his part of the bargain and rendered the consideration called for by
        the employment contract. There is no occasion, therefore, to rely upon the
20      doctrine of promissory estoppel, which is necessary only to supply consideration
        for a promise when no actual consideration was given by the promisee.

21

22  Id.

23

24      Korodi, like Youngman, alleges that he detrimentally relied on a promise by entering
25  into employment agreement. However, Korodi's performance – entering into the employment
26  agreement and providing consulting services under that agreement – was requested at the time
27  that Patriot allegedly made the oral promise that Korodi could participate in Patriot's stock
    option program.  Thus, Korodi's performance was bargained for, and, as in Youngman, the
28  doctrine of promissory estoppel is inapplicable to the extent Korodi seeks to enforce the

alleged oral promise. (This alleged oral promise, supported by consideration though it is, is nonetheless unenforceable under Delaware law due to the lack of a writing and board approval, as discussed *supra*). Moreover, Korodi could not, in choosing to enter into the consulting agreement in August of 2005 and to provide consulting services pursuant thereto, have relied on the later, written promise given to him in February of 2006. See Youngman, 70 Cal.2d at 251 ("[I]t seems evident that Youngman, who was employed by the district in April 1963, could not have relied upon a promise made thereafter in originally accepting employment.").

Finally, Korodi alleges that he reasonably and detrimentally relied on Patriot's February 27, 2006 promise of 400,000 shares by agreeing to "accept" his termination. However, because Korodi's services could be terminated at any time, his "acceptance" of his termination was out of necessity, not reliance.

Because Korodi has failed to specifically plead facts that establish the essential element of detrimental reliance, the motion to dismiss Count 9 is granted.

## IV.   Conclusion

For the reasons set forth above, the Motion to Dismiss the First Amended Counterclaim and Third-Party Complaint is **granted**. However, because it is not beyond doubt that Korodi cannot amend his counterclaim to allege viable claims for relief, Korodi is granted leave to amend his counterclaim and third-party complaint consistent with this opinion. The amended pleading shall be filed on or before **July 30, 2007. Within 10 days of the filing of the present order, the parties shall contact Magistrate Judge Bencivengo's chambers to schedule a settlement conference.** Moreover, any issues regarding Korodi's entitlement to discovery prior to the filing of his amended pleading shall be raised with the Magistrate Judge.

**IT IS SO ORDERED.**

DATED: 5|23 ,2007

JOHN S. RHOADES, SR.
United States District Judge

cc:   All parties